IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

ROBERT GORMAN                          :
                                       : CIVIL ACTION
   -vs-                                :
                                       : NO. 11-6340
CITY OF CHESTER                        :
JOSEPH BAIL, FLOYD LEWIS III,          :
DAREN ALSTON, AND WENDELL BUTLER       :

**PLAINTIFF'S OPPOSITION RESPONSE TO THE DEFENDANTS'
MOTION TO DISMISS PARTS OF THE FIRST AMENDED COMPLAINT**

I.      FACTS

This is a section 1983, 1985 and 1983 civil action that asserts the Defendants under color of state law deprived the Plaintiff of civil rights. Plaintiff asserts he was deprived of his First, Fourth, and fourteenth Amendment rights The Defendants seek to dismiss Counts II, III, IV and V.

Plaintiff asserts, inter alia, that the Defendants deprived him of the process due him under law, thus Plaintiff claims a deprivation of his Fourteenth Amendment right; and Plaintiff asserts too that the Defendants caused him to be arrested and without probable cause, and the arrest was motivated by First Amendment Free Speech and Petition Clause Activities. The Defendants do not move to dismiss Count I of the Complaint (the Fourth Amendment claim)., Plaintiff submits, for the argument made, authority cited, and under the standard of review, that the Defendants' challenged to all Counts except to Count I fail because the Defendants have not shown there are not plausible claims under the challenged counts; ergo, it is submitted the Defendants' motion to Dismissed in part the First Amended Complaint must be DENIED..

II.     STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted". A 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2). That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the Defendant fair notice of what the claim is and the grounds upon which it rests. Twombly, 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). Nevertheless, a court  [*9] need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 945 (quoting Car Carriers, Inc. v. Ford Motor Company, 745 F.2d 1101, 1106 (7th Cir. 1984)(emphasis in

original); *Haspel v. State Farm Mutual Auto Insurance Company*, 241 Fed. Appx. 837, 2007 WL 2030272, at *1 (3d Cir. 2007).

II.   ARGUMENT

**The 1986 Claim is not time barred**

The Sole challenge to the 1986 claim (failure to stop another from depriving a person of a civil right) is upon an argument that the claim must be brought within one (1) year and was not. However, the limitation bar the defendants rely on is as so narrow as the Defendants argue, for when computing the time the time bar starts to tick under the statute on must apply various doctrines that stop the clock or establish when the time clock starts.

It is axiomatic that there is no cause of action until a harm occurs and there are doctrines that toll the limitation period. The Defendants have not addressed when the harm occurred to the Plaintiff or any other legal doctrine; rather, the Defendants merely argue that one of the many acts of the Defendants occurred December 16, 2009 and the suit was not commenced until October 2011 (page 5 of the Defendants' brief); thus, the 1986 action is time barred.

However, the earliest date for the Defendants' acts that support liability (which liability related to some but not all of the causes of action) is November 4, 2009. The last overt act and a discreet act that allows for Section 1983, 1985 and 1986 liability for a Fourth Amendment unreasonable seizure and Free Speech First Amendment claim occurred on July 7, 2011. This action was commenced on October 11, 2011. Thus, from the last act of the conspiracy and to the date of suit commencement is within one year or more precisely about three months. If so there is no limitation issue at all.

The Supreme Court in *Garcia* established that the state's statute of limitations applicable to personal injury torts should be applied in all § 1983 actions. *Garcia*, 471 U.S. at 280. With

respect to § 1985(3) actions, the federal cause of action under Sections 985 and 1986 are silent as to the applicable limitations period; thus, the appropriate state statute of limitations is to be followed. International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 16 L. Ed. 2d 192, 86 S. Ct. 1107 (1966). Third Circuit, however, has declared unequivocally that *Garcia* should apply only to § 1983 actions. *Gavalik*, slip op. at 18. This ruling, read in light of the Third Circuit's limitations position with respect to a 1983 action suggests that § 1985(3) claims is governed by the two-year period. *Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000).*[1]

Section 1983 states:

> Every person who, under color of any **statute,** ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
> 42 U.S.C. § 1983.

Section 1985(3)  prevents individuals from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

The United States Supreme Court has stated that for purposes of a civil rights action under § 1983 or § 1985, courts should apply the state statute of limitations applicable to personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276-279, 105 S.Ct. 1938, 1947-1949, 85 L.Ed.2d

---

[1] Sections 1983 and 1985(3) do not include a relevant statute of limitations. To ascertain the applicable statute of limitations for an action pursuant to § 1983 or § 1985, courts must rely on 42 U.S.C. § 1988, which requires the court to apply the statute of limitations for the state where it sits unless applying the state's statute of limitations would conflict with the United States Constitution or with federal law.

254, 267-269 (1985). Pennsylvania's statute of limitations period for personal injury actions is two years. 42 Pa.C.S.A. § 5524(7).

Section 1986 creates a cause of action against an individual who fails to prevent a wrongful act from being committed when the individual has knowledge of "the wrong conspired to be done." 42 U.S.C. § 1986. A claim brought under § 1986 is subject to the explicit limitations of the statute, which states that "no action under the provisions of this section shall be sustained which is not commenced within one year *after the cause of action has accrued*." Id. Emphasis Added.

Under federal law, the statute of limitations begins to run from the time when the plaintiff knows or has reason to know of the injury. *Gibson v. Superintendent of New Jersey Department of Law and Public Safety*, 411 F.3d 427, 435 (3d Cir. 2005); *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1993). The United States Supreme Court has held that the statute of limitations for a § 1983 claim seeking damages for false arrest and imprisonment in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run "at the time the claimant becomes detained pursuant to legal process", *and the claimant is not barred from bringing a claim prior to the dismissal of his case*. Wallace v. Kato, 549 U.S. 384, ___, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973, 986 (2007). Emphasis added.

Additionally, the Third Circuit has recognized that the applicable statute of limitations may be extended under two doctrines, the discovery rule and equitable tolling. See Oshiver, 38 F.3d at 1386-1388. The discovery rule postpones the beginning of the statute of limitations period from the date when the alleged unlawful act occurred to the date when the plaintiff actually discovered his injury. Id. at 1386; Lopez v. Brady, 2008 U.S. Dist. LEXIS 43797, 2008 WL 2310943, at *4 (M.D.Pa. June 3, 2008). Furthermore, the statute of limitations may be

extended if equitable tolling is applicable. The Third Circuit has stated that equitable tolling is appropriate in three common situations: where "(1) the Defendant has actively misled the plaintiff; (2) the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Miller v. Beneficial Management Corporation, 977 F.2d 834, 845 (3d Cir. 1992).[2]

Claims alleging a civil rights conspiracy can be brought under Section 1983, Section 1985, **and** Section 1986. The filing deadline for a civil rights conspiracy claim "runs from *each* overt act causing damage," and "for *each* act causing injury, a claimant must seek redress within the prescribed limitations period." *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984) (emphasis added) (noting that for criminal conspiracies *the limitations period does not begin to run until the commission of the last overt act of the conspiracy*, but that the rule is different for civil conspiracies because "[i]n the civil case, actual injury is the focal point, not the illegal agreement per se, as is true in the criminal context" (citation omitted).

Plaintiff commenced the action on October 11, 2011 (Doc # 1) and the last act in the conspiracy was the criminal trial. The trial ended on July 7, 2011 (¶ 69). Plaintiff's arrest was on November 11, 2009 (¶ 59). The Complaint at Paragraph 130 specifically reads:

> The last overt act of any Defendant in the agreement and individual plan to deprive the Plaintiff of civil rights, for the purposes of the criminal prosecution, [was] on July 7, 2011, and for a deprivation of the process due the Plaintiff under the Chester City Code, allowing for the Plaintiff to choose the hearing process for his termination, on November 9, 2009.

---

[2] Here Plaintiff pursued his relief in the criminal court action. Plaintiff to pursue the Fourth Amendment claim, for the initiation of the process. In fact legally the Plaintiff had to do so in order to fulfill the "favorably ended" element of the action.

If so, the statute of limitations (one or two year bar) that the Defendants rely on for dismissal is not a bar at all under the facts as pled, because the "last act in the conspiracy as pled, was July 7, 2011. Since suit commenced within one (1) year of the last, the Plaintiff submits that the Defendants' motion to dismiss must be denied. The failure to prevent the trial of July 7, 2011 is within one year of the date suit was started. Accordingly, the 1986 action is not time barred.

**There is a Section 1985 claim for a conspiracy, based on**
**A conspiracy to treat different a person because of race and/or to**
**deny equal protection of law[3]**

The Defendants assert that they are the same race as the Plaintiff (page 6 of their Brief). This fact does not appear in the complaint, yet, as pointed out by the authority cited by the Defendants, only the acts as pled, and all reasonable inferences, are viewed by the Court when deciding a motion to dismiss. And, aside from this standard violation by the Defendants, the Defendants argument about the same race (which is nearly word for word as said in the first motion to dismiss) is of no moment. The argument boiled down to its essence is that there is no plausible claim for a conspiracy to deprive rights because the Plaintiff's race is the same as some of the Defendants. The argument however, is unsupported by any authority cited by the Defendants.

It is established law however that persons can discriminate against person of their same race and that person who are not even the same race as those being discriminated against are protected under the anti-discrimination laws. See *Moore v. City of Philadelphia*, 461 F.3d 331(3d Cir. 2006):

> [T]he fact that the plaintiffs are white is not a "threshold problem"
> for their retaliation claims. While white workers may be unable to

---

[3] It is unclear and appears to the Plaintiff that there is no challenge by the Defendants to the Fourteenth Amendment Equal Protection claim (Count III ¶120).

successfully complain under the anti-discrimination provision of
Title VII solely because they are required to work in an
environment hostile to blacks, if they became the victims of
"materially adverse actions" because they reasonably perceived
that environment as violative of Title VII and objected, they have a
valid retaliation claim. 42 U.S.C. § 2000e-3(a) (making it unlawful
to discriminate against an employee who "has opposed any
practice made an unlawful employment practice by this
subchapter" or "has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or
hearing under this subchapter"); 2 EEOC Compliance Manual § 8,
p.      8-2      (1998)      available      at      http:
//www.eeoc.gov/policy/docs/retal.pdf (as visited Aug. 1, 2006)("A
charging party who alleges retaliation under Title VII . . . need not
also allege that he was treated differently because of race, religion,
sex, national origin, age, or disability."). See also Burlington N. &
Sante Fe Ry. Co., 126 S. Ct. at 2412. ("The substantive [anti-
discrimination] provision seeks to prevent injury to individuals
based on who they are, i.e., their status. The anti-retaliation
provision seeks to prevent harm to individuals based on what they
do, i.e., their conduct."). That is precisely what these plaintiffs
claim here. Title VII's whistle-blower protection is not limited to
those who blow the whistle on their own mistreatment or on the
mistreatment of their own race, sex, or other protected class.

Id at 342.

More importantly, it is the Defendants who carry the burden here, and the Defendants

must show, to prevail on their motion, that there is no "plausible claim" pled (*Iqbar and*

*Twombly*). Here, the Defendants have NOT presented any authority that states people cannot

conspire to deprive person of the same race of civil right. Ergo, the Defendants have failed in

their burden and specifically failed to show there is not a plausible conspiracy claim pled by the

Plaintiff. Merely because some of the Defendants may be of the same race as the Plaintiff does

not mean that as a matter of law there can be no race discrimination claim or conspiracy to

deprive rights because of race. A person can conspire to deprive civil rights or be motivated to do

such because of an animus for a certain race. Discovery is more likely the tool that will flush out

the motivating factors for why the Defendants treated the Plaintiff differently than others similarly situated. At this point, however, the Defendants have not shown under law there is not a race discrimination claim or a conspiracy to deprive rights because of race.

Further, the Plaintiff has asserted that his race was a motivating reason for the Defendants' acts against him. This allows at this time the court to view the acts by the Defendants as racial or otherwise class based invidious discriminatory. A Section 1983 race based claim is plausible where, a person is treated differently than similarly-situated individuals because of their race, see *Oliveira v. Twp. of Irvington,* 41 Fed. Appx. 555 (3rd Cir 2002). Moreover, whether the Defendants race is the same as the Plaintiff's is immaterial to the question whether there is different treatment because of race.

Plaintiff submits that a plausible Section 1983/1985 Race based Equal Protection claim was been pled and that the Defendants have not presented any authority that supports their argument for dismissal. If so, and because it is pled that Plaintiff is an African-American (¶ 8) that was treated different, where as it was pled "no other Chester Police Offer" was treated like Plaintiff (¶105 and 117) and the different treatment is due to the Defendants animus for the Plaintiff's race (¶ 15), the Plaintiff submits that the Defendants' motion to dismiss the 1983 /1985 race discrimination / conspiracy claims must be denied.

### B. Count II First Amendment
### Free Speech and Petition Clause Claim

To maintain a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in an activity protected by the First Amendment; (2) the employer took a retaliatory action that was "sufficient to deter a person of ordinary firmness from exercising his

constitutional rights"; and (3) there was a casual link between the protected conduct and the adverse action. *Thomas v. Independence Twp*., 463 F.3d 285,296 (3d Cir. 2006).

Plaintiff alleges his activities were protected by both the Free Speech and Petition Clauses of the First Amendment. (Count II) Under both clauses, for expression to be considered protected activity, a plaintiff must show: (1) that he spoke or petitioned as a citizen on a matter of public concern; and (2) that his First Amendment interest in expression is not outweighed by the government's countervailing interest in the "effective and efficient management of its internal affairs." *Borough of Duryea, Pa. v. Guarnieri,* 131 S. Ct. 2488, 2493, 2500 (2011). Nevertheless, speech that is motivated by private concern may still qualify as protected speech. Id. at 412. The speaker's motive, while relevant, is not dispositive in determining whether speech relates to a matter of public concern. Id. at 413.

Here, the activity of the Plaintiff did not interfere with any governmental function. It too would seem from the Defendants' argument, and despite *Guarnieri, supra*, that the First Amendment right to free speech protection for truthful testimony in court is non-existence. Under the Defendants' apparent interpretation of *Guarnieri* (for free speech activity and/or petition clause activity), one will never be protected for truthful testimony in court, because the person testifying is testifying on a personal matter. However the Defendants' interpretation is contrary to the law or even the rational in *Guarnieri,* which as said in the case did not end such protection. Rather, the decision is the petition activity must touch on a matter of public concern.

Our Circuit in *Reilly*, Infra, allowed a First Amendment Free speech to go to trial for court testimony, the Court said the following:

> We agree that some aspects of Reilly's speech in the context of the Munoz investigation require further factual development by the District Court. On the other hand, the fact of Reilly's sworn testimony at the Munoz trial is sufficiently developed on this appeal for us to consider as

a matter of law whether that speech was made "pursuant to [his] official duties," *Garcetti,* 547 U.S. at 421, so as to foreclose his retaliation claim, or whether that speech entitled Reilly to the protections of the First Amendment.

In analyzing Reilly's retaliation claim, the District Court asked whether Reilly's speech involved a matter of public concern and whether the *Pickering* balancing weighed in favor of Reilly. *See Reilly,* 427 F. Supp. 2d at 514-15 (citing *Springer,* 435 F.3d at 275). We have stated that following *Garcetti,*

[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made [i.e., the *Pickering* balancing test].*Hill v. Borough of Kutztown,* 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti,* 547 U.S. at 418).

*Garcetti* simply "narrowed the Court's jurisprudence in the area of employee speech" by further restricting the speech activity that is protected. *Foraker,* 501 F.3d at 241. Here, the District Court concluded that Reilly's speech was a matter of public concern and that the *Pickering* balancing favored Reilly. *See Reilly,* 427 F. Supp. 2d at 515. Therefore, the effect of *Garcetti* in the context of this appeal is limited to the question whether Reilly spoke as a citizen when he testified at the Munoz trial.

The Third Circuit then address the issue of "matters of public concern"[4] which is the

prong that the Defendants here in this action challenge with argue that there is no public concern

by the Plaintiff's state criminal court activities, viz participate and testify truthfully. The Third

Circuit specifically adopted the rule of law that: "**The paramount importance of judicial**

**truth-seeking means that truthful trial testimony is almost always of public concern**."); Our

Circuit said:

---

[4] Whether an employee's speech addresses a matter of public concern is a question of law to be resolved by the Court, and "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-148 (1983). An employee's speech is considered a matter of public concern when it can be "fairly considered" to relate to "any matter of political, social, or other concern to the community." Watters v. City of Phil a., 55 F.3d 886,892 (3d Cir. 1995). In other words, public speech cannot constitute merely personal grievances. Brennan v. Norton, 350 F.3d 399,412 (3d Cir. 2003).

*Green v. Philadelphia Housing Auth.,* 105 F.3d 882, 887 (3d Cir. 1997). In that case, Green, a police officer for the Philadelphia Housing Authority Police Department, was transferred from a special unit within the department to regular patrol duty after he voluntarily appeared as a witness at the bail hearing of a longtime friend's son. *Id.* at 884. Although Green refused to testify at the hearing after learning that the charges against his friend's son included organized crime activity, he was nonetheless transferred from the special unit after an unidentified officer notified the special unit's captain that Green had appeared as a character witness for a member of a crime organization. *Id.* We concluded that "there is a compelling reason to find Green's appearance to be a matter of public concern regardless of its voluntary nature. That reason, of course, is the integrity of the truth seeking process." *Id.* at 886. We elaborated, "[t]he utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony     at     such     proceedings**.**"     *Id.*     at     887.

Many courts of appeals have joined this court and the Court of Appeals for the Fifth Circuit in recognizing the fundamental role in-court testimony plays in our society and its importance to the question whether a public employee's speech is protected by the First Amendment. *See, e.g., Herts v. Smith,* 345 F.3d 581, 586 (8th Cir. 2003) ("Subpoenaed testimony on a matter of public concern in ongoing litigation . . . can hardly be characterized as defeating the interests of the state . . . . Dr. Herts's speech therefore qualifies as protected speech."); *Catletti ex rel. Estate of Catletti v. Rampe,* 334 F.3d 225, 229-30 (2d Cir. 2003) ("In this case the context of Catletti's speech-testimony offered at a trial-is significant. . . . **The paramount importance of judicial truth-seeking means that truthful trial** testimony **is almost always of** public concern**.'');** ***Worrell v. Henry,* 219 F.3d 1197, 1204-05 (10th Cir. 2000)** ("[T]ruthful testimony is protected by the First Amendment and . . . a government employee may not be fired or subjected to other adverse action as a result of such testimony**.**"); *Wright v. Ill. Dep't of Children & Family Servs.,* 40 F.3d 1492, 1505 (7th Cir. 1994) (holding that "an employee summoned to give sworn testimony . . . has a compelling interest in testifying *truthfully* and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases"); *cf. Robinson v. Balog,* 160 F.3d 183, 189 (4th Cir. 1998) ("By responding to the Board's invitation to testify at a public hearing and by cooperating with law enforcement investigators, Robinson and Marc spoke not in their capacity as . . . public employee[s], but as citizen[s] upon

matters of public concern.") (citations and internal quotation marks omitted).

Despite the overwhelming weight of authority concluding that an employee's truthful testimony in court is protected by the First Amendment, we are aware of no precedential appellate decision after *Garcetti* answering the question whether truthful trial testimony arising out of the employee's official responsibilities constitutes protected speech. [5] Only one federal appellate court has issued a precedential opinion even touching upon this issue. Specifically, the Court of Appeals for the Seventh Circuit concluded that a police officer's subpoenaed civil deposition testimony "was unquestionably not . . . part of what he was employed to do," and thus it was protected even though the officer testified about speech that was made pursuant to his official duties. *Morales v. Jones,* 494 F.3d 590, 598 (7th Cir. 2007); *see also Fairley v. Fermaint,* 482 F.3d 897, 902 (7th Cir. 2007) (noting that *Garcetti* did not apply to testimony given by county jail guards in inmate lawsuits because assisting prisoners in their litigation did not fall within the guards' official duties).

Our Circuit is firm on this rule of law too, for in yet another case the Circuit Court said: "court testimony**,** whether compelled or voluntary, is always a matter of public concern". See *Swartzwelder v. McNeilly*, 297 F.3d 228 (3rd Cir. 2002)); *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 887 (3d Cir. 1997) ("we can discern no reason why a voluntary [court] appearance would eliminate the public interest"); *and Pro v. Donatucci*, 81 F.3d 1283, 1291 (3d Cir. 1996) (recognizing that a public employee's court appearance in response to a subpoena is a matter of public concern).

Since truthful testimony of any type (voluntary or compelled) "always remains a public concern" and because the Defendants only challenge to the Plaintiff's First Amendment claim is that the speech was not on a public concern, and because the Defendants have not presented any authority that supports their argument, and because it **still remains the law post** *Garcetti* **and** *Guarnieri*, that truthful testimony in court is a "public concern" and will be protected free speech

activity, even though the activity may also involve a personal interest (*Reilly v Atlantic City*, 532

F.3d 216 (3rd Cir 2008)); *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493, 2500

(2011) cited too in *Roberts v Freman*, ____F. sup. _____ (E.D. Pa., July 19, 2011) 2011 U.S.

Dist. LEXIS 105225 (by the Honorable L. Felipe Restrepo, United States Magistrate Judge, and

*Swartzwelder v. McNeilly*, 297 F.3d 228 (3rd Cir. 2002)), the Plaintiff submits that at this juncture

of the case a plausible First Amendment free speech and petition clause claim has been pled[5].

Ergo, Plaintiff submits the Defendants' motion to dismiss Count II fails and must be denied.

COUNT III
Due Process But No Challenge to the Equal Protection Claim

The Fourteenth Amendment provides that a State may not "deprive any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A procedural due

process claim is subject to a "two-stage" inquiry: (1) whether the plaintiff has "a property interest

protected by procedural due process**,**" and (2) "what procedures constitute 'due process of law.'"

*Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003). In assessing what process is due,

Our Circuit Court has said that courts must consider the factors set out in *Mathews v. Eldridge*:[6]

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

---

[5] The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976); see also Abu-Jamal v. Price, 154 F.3d 128, 136 (3d Cir. 1998).Cited in *Swartzwelder v. McNeilly*, 297 F.3d 228 (3rd Cir. 2002))

[6] 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976);

First, it is agreed there is no substantive due process claim,; however Plaintiff has not pled one, because our Circuit has held there is no substantive due process claim for public employees. As for a denial of procedural due process, that claim is controlled by state law, viz what state law allows as the process due a person.

Moving to the *Lowdermill* part of the procedural due process claim, which was at least the opportunity to speak on the reason for the suspension but included "an explanation of the evidence" relied on for the suspension (¶¶ 63-65), the Defendants impermissible attempt to present an argument that is unsupported by the facts pled in the Complaint. Here, the Defendants argue they had to act quickly to remove the Plaintiff; thus, the failure to provide a pre-suspension - Loudermill hearing is justified. Justification however is a defense and defenses cannot be asserted in a motion to dismiss. Rather, to assert the defense the Defendants must file an Answer. Next, there are no facts before this court or in the complaint to establish a "justification defense" or need to "quickly act". Thus, the Defendants argument fails.

The facts pled in the Complaint show that Plaintiff was the victim of a threat to be shot and that he lawfully used self-defense to protect himself. It cannot be forgotten too that, as pled, the finding of the criminal court is that Plaintiff properly and justifiably used self-defense. As such, the Defendants' justification defense is in dispute by facts that cannot be disputed.

Plaintiff submits the procedural due process claim must survive.[7]

---

[7] The Supreme Court's decision in *Loudermill*, 470 U.S. at 542, clearly established that, absent extraordinary circumstances, certain state employees were entitled to a hearing prior to termination. Cases from this Circuit also made clear that this rule applies to **police officers**. *See, e.g., Gniotek*, 808 F.2d at 244."Due process is flexible and calls for such procedural protections as the particular situation demands," *Mathews*, 424 U.S. at 334, several general principles guide application of the *Mathews* test. One "essential principle" is that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)). Accordingly, "[o]nly in 'extraordinary situations where some

With regards to the post suspension due process, the suspension was without pay, and as has been held numerously by the courts, classified employees under Pennsylvania's Civil Service Act cannot be suspended or terminated without just cause. This recognition is due principally because there is a recognized property interest in the position, so a pre and post hearing process has been required under state and federal law. The requirement applies both to terminations and to suspensions. *See, e.g., Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008). It too is established law that "absent extraordinary circumstances" where there is a protected property interest, that at least a brief and informal pre-termination or pre-suspension hearing. *Loudermill*.

The Defendants present no extraordinary circumstance but only a novel argument that because the Plaintiff was given some type of post termination hearing process, via the Civil Service Commission. Thus, according to the Defendants the Plaintiff has received the process due him. The Defendants' argument fails and the reason it fails is twofold. One the Defendants offer no authority to support the novel argument and two the argument is directly contrary to the law.

The Circuit Courts seem uniform as far back as 2006 to concluded that "due process requires pre-termination notice and an opportunity to respond even where a [collective

---

valid government interest is at stake' is it permissible to postpone the hearing until after the deprivation has already occurred." *Dee*, 549 F.3d at 233 (quoting *Roth*, 408 U.S. at 570 n.7). Providing an opportunity to be heard prior to suspension without pay would not impose a significant administrative or fiscal burden on the Commonwealth of Pennsylvania. Ordinarily, a pre-deprivation hearing "need not be elaborate." *Loudermill*, 470 U.S. at 545. Where adequate post-deprivation procedures are available, an employee is entitled only to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id*. (emphasis added) The hearing can be informal and "need not definitively resolve the propriety" of the deprivation. *Id*. "It should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id*. An employee is generally not entitled to notice of the reasons for his discharge in advance of a pre-deprivation hearing, *Gniotek*, 808 F.2d at 244, or to present his case to an impartial decision-maker at such a hearing, *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995).

bargaining agreement] provides for post-termination procedures that fully compensate wrongfully terminated employees." *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.*, 52 F.3d 623, 629 (7th Cir. 1995); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (hearing required prior to demotion of employee, even where post-demotion union grievance procedures were available); *Cotnoir v. University of Me. Sys.*, 35 F.3d 6, 12 (1st Cir. 1994) (hearing required prior to termination of employee, even where post-termination union grievance procedures were available).

Here, Commonwealth law provides to the Plaintiff a choice of the process due him for a hearing post deprivation of property (here the employment, benefits and wage from the employment). The law gives to the Plaintiff and NOT the Defendants the process to be used. State law affords two methods to the Plaintiff for a post loss of employment, rank, pay or grade. One is a Local Agency Hearing, which is held before the City Council. The other process is under Civil Service and is before the City Civil Service Commission. Thus, Plaintiff under state law can choose to go before the Local agency or the Civil Service Commission. The Plaintiff chose the local agency hearing process that is before the City Council. The Defendants did not provide that process.

It is pled the Defendants did not provide the elected or chosen process state law grants to the Plaintiff, thus, the Plaintiff was deprived of the very process state law affords to the Plaintiff. It is pled the Defendants deprived the Plaintiff of the right to chosen the process, which state law again grants to the Plaintiff. Ergo, it is pled the Plaintiff was intentionally deprived by the Defendants of the process due the Plaintiff under state law.  Despite such, the Defendants argue there is no due process violation thus claim, because the Plaintiff was given some type of hearing and one before the "Mayor controlled Civil Service Commission" (First Amended Complaint ¶¶

17

67-74). That is not the issue, e.g. if a hearing was provided. The issue is whether the elected

Local Agency state law process, which law grants to the Plaintiff the hearing choice, was

provided.  The Defendants do not address the issue and/or the deprivation of the elected process

right, which is, as said specifically pled (see ¶¶ 63 -74). The Defendants presented no authority

to say there is not a due process claim when the Defendants do not provided the elected process

but choose to send the matter for a hearing before a tribunal not empowered under law to hear

the matter, because that tribunal was not election by the Plaintiff to hear the post termination /

suspension.  The Defendants brief is also void of any citation to authority on the specific post

suspension / termination procedural due process issue thus claim. Plaintiff's facts reasonably

infer, or if not actually show, there was intentional conduct and/or reckless disregard for and/or

deliberate indifference of the Plaintiff due process right to choose and have a Local Agency

Hearing by the Defendants.

As said, state law confers on the Plaintiff and NOT the Defendants the right to choose

where there will be a lost termination hearing process. The facts specifically pled establish not

only a pre but a post suspension due process deprivation. After all, *Loudermill* was violated and

so to the state afforded post termination/suspension process that was due the Plaintiff and chosen

by the Plaintiff. The post and pre suspension process law provided to the Plaintiff was not

provided to the Plaintiff by the Defendants. It too is no moment that some type of post

suspension hearing was held. What is important for the due process claim is that the process state

law affords to the Plaintiff was provided to the Plaintiff by these Defendants.

Since the state law gives to the Plaintiff a pre suspension *Loudermill* hearing right and

also a post suspension Agency Hearing right, and the Amended Complaint present facts that  the

hearings were not provided but deprived by the Defendants; it is submitted that the First

Amended Complaint shows there is a plausible due process claim and of the process Plaintiff chose and state law grants to him. Because the Plaintiff exhausted all available post deprivation state remedies, thereafter (arbitration), as pled, there is a plausible due process claim pled.

If so, and because the Defendants have presented no authority to support their argument for dismissal, the Defendants have failed to show there is not pled a "plausible" due process claim.


Monell

The Mayor and Police Chief are alleged to have deprived the Plaintiff of federal rights. Each at this juncture is a final policy-maker. As such, each of their action hold each individually liable. The acts were done in the performance of their duties as (respectively) Mayor and Police Chief. As such, the City of Chester is liable for the "official" acts of the Mayor and Chief of Police.

To hold a municipality liable one of several ways exists. The Defendants merely talk about one, which is the existence of a policy, practice or custom, but the Defendants do not mention a failure to train and/or supervise. The Third Circuit Model Jury instructions (4.6.3-8) and comment below are instructive to the resolution of the Monell issue. The Comment under Instruction 4.6.3 reads:

> It is clear that a municipality's legislative action constitutes government policy. "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Likewise, if the legislative body delegates authority to a municipal

agency or board, an action by that agency or board also constitutes government policy. *See, e.g.*, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 660-61 & n.2 (1978) (describing actions by Department of Social Services and Board of Education of the City of New York); *id.* at 694 (holding that "this case unquestionably involves official policy").

Instruction 4.6.5. reads:

> The [governing body] of the [municipality] is a policymaking entity whose actions represent a decision by the government itself. The same is true of an official or body to whom the [governing body] has given final policymaking authority: The actions of that official or body represent a decision by the government itself.

> Thus, when [governing body] or [policymaking official] make a deliberate choice to follow a course of action, that choice represents an official policy. Through such a policy, the [governing body] or the [policymaking official] may cause a violation of a federal right by:

> ● directing that the violation occur,

> ● authorizing the violation, or

> ● agreeing to a subordinate's decision to engage in the violation.

> [The [governing body] or [policymaking official] may also cause a violation through [inadequate training] [inadequate supervision] [inadequate screening during the hiring process] [failure to adopt a needed policy], but only if the [municipality] is deliberately indifferent to the fact that a violation of [describe the federal right] is a highly predictable consequence of the [inadequate training] [inadequate supervision] [inadequate screening during the hiring process] [failure to adopt a needed policy]. I will instruct you further on this in a moment.]

Here, a policy of Chester City is established by the actions of the Mayor, who sent to the

Civil Service Commission the post suspension and termination decision, contrary to state law

and the Plaintiff's choice. State law, as said, gave Plaintiff the right to choose which forum to

litigate the suspension and termination. As such, the Mayor has by his actions created a policy

for Chester City that deprived the Plaintiff of the very process the plaintiff was due under state law.

If so there is a policy of the City of Chester that deprived Plaintiff's right under the Fourteenth Amendment; thus, there is a Monell action that is plausible.

Also, as noted in the Complaint, which specifically reads, the Defendants are sued under a throaty of "individual liability" (¶¶ 2 & 9). This infers the City of Chester is being sued for the "official" acts of the Mayor and Chief of Police.

It too is pled that there is a failure to supervise (¶ 129) and from that failure to supervise the Plaintiff was deprived of his rights to be free from an unreasonable seizure, a malicious prosecution and denial of due process, viz the right to choose and have a Local Agency hearing as opposed and over a "Mayor controlled Civil Service" hearing.

Further, the decision of the police chief to deny Plaintiff a Loudermill hearing is a decision of and by a final-decision-maker. A deliberate choice by an individual government official constitutes government policy if the official has been granted final decision-making authority concerning the relevant area or issue.  *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *see also LaVerdure v. County of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003).

If so, under Model Jury Instruction 4.6 there is pled a "plausible" Monell action against the City of Chester. Accordingly, the Plaintiff submits Chester City's motion to dismiss fails to show there is not at least a "plausible" Monell claim, therefore, the City of Chester's motion must be denied.

State Claims – Count VI

Negligent Torts

The City is not being sued for negligent conduct, and the Defendants correctly note that the Plaintiff has not pled any negligent clams. Plaintiff understands that the claims brought do not fall within the Pennsylvania Tort Claims Act, which Act allows for specific events to sue under and for negligence; none of the acts, however, fall within the numerated exceptions to negligent tort immunity. As such, there is no negligent claim asserted against the City of Chester.

Intentional Torts

The claims against the individual Defendants and not the City of Chester, for the intentional torts, can be pursued, but no intentional claim is or can be asserted against the City of Chester. Rather, in this case, only intentional torts have been asserted against the individual Defendants.

It is alleged the individual Defendants' conduct was malicious and willful misconduct, which conduct removes the individual Defendants from the immunity provisions of the Pennsylvania Tort Claims Act. Because the Defendants do not address the exception to the Pennsylvania Tort Claim Act, nor have the Defendants shown their malicious conduct is not actionable for a malicious prosecution; false arrest and imprisonment, and civil conspiracy claim, these claims survive the Defendants challenge. The Defendants motion to dismiss must be denied.

It is the Defendants burden to show the court each and every one of the intentional tort claims is not plausible. To do that requires more than merely arguing such and then asking the Court to dismiss the claims under purely conclusory argument; which argument is wholly undeveloped. There too is not one citation by the Defendants to authority that support the conclusory argument. Plaintiff submits the Defendants have not met their burden to show the

intentional tort claims are not plausible. Therefore, the Plaintiff submits the Defendants motion to dismiss the tort claims must be denied.

**<u>Federal claims against Defendants Butler Alston and Lewis – personal involvement</u>**.

To the point, the Defendants seek a particularized pleading standard; rather, that the fair notice standard. The First Amendment Complaint provided fair notice of a plausible federal action against Defendants  Butler, Alston and Lewis. Third Circuit's Model Jury Instruction provided the authority for the argument that there is federal liability when a supervisor or non-supervisor fail to stop and/or prevent a deprivation of civil right. The First Amended Complaint pleads that these Defendants did not supervise and/or stop Defendant Bail.

The "Personal Involvement" requirement to be held accountable under Section 1983 can be established by showing actual involvement or asserted through allegations of facts showing that a Defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.").*Marrakush Soc. v. New Jersey State Police*, 2009 WL 2366132, at *31 (D.N.J. July 30, 2009); *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (applying the framework set by *Baker v. Monroe Tp.*, 50 F.3d 1186 (3d Cir. 1995). Supervisory liability claims can be established by showing  the supervisor was involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged. *Reedy, Supra*.

Model Instruction 4.1.1 and .2 (read in this order) provides as follows:

> [Plaintiff] contends that [supervisor's] subordinate, [subordinate], violated [plaintiff's] federal rights, and that [supervisor] should be liable for [subordinate's] conduct.  If you find that [subordinate] violated [plaintiff's] federal rights, then you must consider whether [supervisor] caused [subordinate's] conduct.

> [Supervisor] is not liable for such a violation simply because [supervisor] is [subordinate's] supervisor.   To show that

[supervisor] caused [subordinate's] conduct, [plaintiff] must show one of three things:

First: [Supervisor] directed [subordinate] to take the action in question;

Second: [Supervisor] had actual knowledge of [subordinate's] violation of [plaintiff's] rights and [supervisor] acquiesced in that violation; or

Third: [Supervisor], with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

As I mentioned, the first way for [plaintiff] to show that [supervisor] is liable for [subordinate's] conduct is to show that [supervisor] directed [subordinate] to engage in the conduct. [Plaintiff] need not show that [supervisor] directly, with [his/her] own hands, deprived [plaintiff] of [his/her] rights. The law recognizes that a supervisor can act through others, setting in motion a series of acts by subordinates that the supervisor knows, or reasonably should know, would cause the subordinates to violate the plaintiff's rights. Thus, [plaintiff] can show that [supervisor] caused the conduct if [plaintiff] shows that [subordinate] violated [plaintiff's] rights at [supervisor's] direction.

Alternatively, the second way for [plaintiff] to show that [supervisor] is liable for [subordinate's] conduct is to show that [supervisor] had actual knowledge of [subordinate's] violation of [plaintiff's] rights and that [supervisor] acquiesced in that violation. To "acquiesce" in a violation means to give assent to the violation. Acquiescence does not require a statement of assent, out loud: acquiescence can occur through silent acceptance. If you find that [supervisor] had authority over [subordinate] and that [supervisor] actually knew that [subordinate] was violating [plaintiff's] rights but failed to stop [subordinate] from doing so, you may infer that [supervisor] acquiesced in [subordinate's] conduct.

Finally, the third way for [plaintiff] to show that [supervisor] is liable for [subordinate's] conduct is to show that [supervisor], with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the conduct. [Plaintiff] alleges that [supervisor] should have [adopted a practice of] [followed the existing policy

of] [describe supervisory practice or policy that plaintiff contends supervisor should have adopted or followed].

To prove that [supervisor] is liable for [subordinate's] conduct based on [supervisor's] failure to [adopt that practice] [follow that policy], [plaintiff] must prove all of the following four things by a preponderance of the evidence:

First:    [The existing custom and practice without [describe supervisory practice]] [the failure to follow the policy of [describe policy]] created an unreasonable risk of [describe violation].

Second: [Supervisor] was aware that this unreasonable risk existed.

Third:  [Supervisor] was deliberately indifferent to that risk.

Fourth:    [Subordinate's] [describe violation] resulted from [supervisor's] failure to [adopt [describe supervisory practice]] [follow [describe policy]].

Model .2

[Plaintiff] contends that [third person] violated [plaintiff's] [specify right] and that [Defendant] should be liable for that violation because [Defendant] failed to intervene to stop the violation. [Defendant] is liable for that violation if plaintiff has proven all of the following four things by a preponderance of the evidence:

First:  [Third person] violated [plaintiff's] [specify right].

Second:  [Defendant] had a duty to intervene. [I instruct you that [police officers] [corrections officers] have a duty to intervene to prevent the use of excessive force by a fellow officer.] [I instruct you that prison guards have a duty to intervene during an attack by an inmate in the prison in which they work.]

Third:  [Defendant] had a reasonable opportunity to intervene.

Fourth:  [Defendant] failed to intervene.

Under the "Comment" section, it is stated that:

A Defendant can in appropriate circumstances be held liable for failing to intervene to prevent a constitutional violation, even if the Defendant held no supervisory position. *See, e.g.*, *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (holding that "a corrections officer's failure to intervene in a beating can be the

basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so," and that "a corrections officer cannot escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers"); *Crawford v. Beard*, 2004 WL 1631400, at *3 (E.D.Pa. July 21, 2004) (holding that to establish failure-to-intervene claim, plaintiff "must prove that: 1) the officers had a duty to intervene, 2) the officers had the opportunity to intervene, and 3) the officers failed to intervene," and that prison guards "have a duty to intervene during an attack by an inmate in the prison in which they work").

Here, a reading the First Amended Complaint as a whole, the Plaintiff submits, established personal involvement by Defendants Lewis, Butler and Also. Plaintiff submits that it cannot be said, and the Defendants have not shown, that Defendants Lewis, Alson and Butler were not personally aware of Defendant Bails conduct, and/or that Lewis, Alson and Butler did not acquiesce to Bails conduct or did not direct the conduct under their supervisory positions. After all, the Police Department is a para-military organization and not only are reports required to be filed by all officers, but all are required to follow a chain of command. Bails is a "Major." Alston Lewis and Butler chides of police and Mayor. Thus, only Lewis, Alston and Butler are the person above Bails and who can direct / supervise Bails actions. These facts the Court need not ignore because they are not only common knowledge facts but the rank and position of the Defendants was pled.

The Complaint specifically shows that Bail and Butler were communicating. At Paragraph 124 of the First Amended Complaint it is plead that "Defendants Lewis, Alston, and Butler supervise Defendant Bail." At Paragraph 59 the First Amended Complaint reads that: Plaintiff on or about November 11, 2009 became aware of the reinvestigation [ordered by Bail] and [of] Defendant Bails action to obtain an arrest warrant, because on November 11, 2009 the

26

Plaintiff was unreasonable seized, arrested and caused to be searched by Defendant Bail. At

Paragraphs 63, the First Amended Complaint reads that: "Plaintiff on or about November 13,

2009 was notified by a November 12, 2009 letter from Defendant Butler that Plaintiff was

suspended with intent to dismiss as a City of Chester Police Officer, for being arrested on

Defendant's Bail charges and for bribery, failure to take police action when out of uniform,

flagrant misuse in handling a firearm, and repeated violations of department rules. Further at

Paragraph 126 the Plaintiff pled that:

> Defendant Bail, with the approval of Butler, Lewis and Alston,
> intentional deceived omitted and flatulently withheld material facts
> of the Foweler event, such as those stated in paragraphs 30 through
> 48 from the reviewing juridical officer, for the purpose of
> deceiving the judicial officer and obtaining a warrant for the
> Plaintiff's arrest.

These paragraphs provide sufficient facts to infer if not actual show there was "personal

involvement" by Butler, Lewis and Alston, and this is shown through the inference that Butler

would not have suspended Plaintiff for Bails action, viz the arrest, unless the two were

communicating with one another. There is no way Butler would have known about the arrest to

suspend the Plaintiff unless there was communication originating from Bail about the arrest and

'basis" for the arrest. The basis is stated in the suspension notice. As such, there is evidence of

personal involvement; ergo, a plausible claim is shown against Butler.

Further, following Butler's suspension of the Plaintiff, the First Amended Complaint at

Paragraph 38 through 41, and 72 and 99[8] show personal involvement by Defendants Butler,

Lewis and Alston; the paragraphs read:

---

[8] Paragraph 99 reads: Defendants Wendell Butler intentionally denied Plaintiff the hearing right and
choice right for where the loss of employment (property) hearing would be heard. Butler moved the
hearing process to the Civil Service Commission which commission and hearing process Butler

37.      Plaintiff elected the right to a post disciplinary hearing before the City Council.

38.      A hearing was not afforded to the Plaintiff in accordance with the City procedures and Collective Bargaining Agreement. Rather, Defendants Lewis, Aston and Butler caused the City Council hearing to be held before the Civil Service Commission which Commission is controlled by Mayor Butler and which Commission of three included the Mayor as a hearing officer.

39.      Before the Mayor controlled Civil Service hearing was held, the Plaintiff by letter from Defendant Butler on November 20, 2009, received an offer from Defendant Butler, Lewis and Alston. Plaintiff was offered the opportunity to stay the hearing until the criminal matter was resolved. However, the offer contained a condition that for the Plaintiff to obtain the stay the Plaintiff had to waive all back-pay should the suspension and/or termination not prevail.

40.      Plaintiff rejected Defendants' Lewis, Butler and Alston's offer and demanded a hearing before City Council.

Paragraph 86 reads, and is deemed by the Defendants as true for the purpose of the motion that

Lewis, Alston and Butler acquiesced and/or approved of Bail's actions, and neither Defendant took action they could have taken to stop Bail from depriving the Plaintiff of Plaintiff's right to be free from an unreasonable search or seizure and/or for retaliating against the Plaintiff for engaging in Free Speech and/or Petition Clause activity.

These paragraphs distilled to their essence show that "by [a] letter from Defendant Butler on November 20, 2009, [the Plaintiff] received an offer from Defendant Butler, Lewis and Alston. Plaintiff [in the letter] was offered [by Defendant Butler, Lewis and Alston] the opportunity to

controlled. Thus there is "personal involvement" my Butler in the denial of due process and equal protection.

stay the [Civil Service] hearing until the criminal matter was resolved. Thus, these paragraphs show communications between all the Defendants and no one Defendant stopping the other Defendants; ergo, there is evidence of direct and personal involvement with the denial of the post suspension review process or acquiescing to the due process deprivation.

Accordingly, the Defendants' motion to dismiss is properly denied.

The Section 1983, 1985 and 1986 Claims Are<br>All Within the Statute of limitation Periods

With respect to the 1983 and 1985 conspiracy claim, neither claim is time barred. Plaintiff commenced the action on October 11, 2011 (Doc # 1) and the last act in the conspiracy was the criminal trial. The trial ended on July 7, 2011 (¶ 69). Plaintiff's arrest was on November 11, 2009 (¶ 59) but under law there was no cause of action available to Plaintiff for the prosecution until the prosecution ended favorably for the Plaintiff. That is because a favorable termination of the process is a required element.[9] See, *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).[10]

Since the trial ended favorably for the Plaintiff on July 7, 2011 (when the trial judge found the Plaintiff not guilt) the last over act in the conspiracy was done on July 7, 2011. Thus, for the conspiracy, which relates to the false arrest and prosecution (unreasonable seizure claim)

---

[9] A Defendant initiating criminal proceedings [and brings] multiple charges is not necessarily insulated in a malicious prosecution case [on all charges] merely because the prosecution of one of the charges was justified. *Johnson v. Knorr*, 477 F.3d 75 (3rd Cir 2007).

[10] To prove malicious prosecution under [§] **1983**, a plaintiff must show that: (1) the Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor;(3) the proceeding was initiated without probable cause; (4) the Defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

the 1983 / 1985 claims are timely, because each claim (thee 1983 and 1985 conspiracy claims) is brought within the two years of the last overt act of the conspiracy.

If so, the Section 1985 claim is timely and the motion to dismiss must be denied.

As for the limitations period for plaintiff's Section 1986 claim, it cannot be forgotten that a Section 186 claim is dependent on there being a 1983 and § 1985(3) action that can be asserted. This means before the 1986 claim here could be brought, the 1983 and 1985 malicious prosecution claim was able to proceed; said differently, there was no longer the Heck v Humphrey bar.

To proceed with a Section 1983 malicious prosecution claim, the Plaintiff had to have a favorable termination. The purpose of the favorable termination requirement is to avoid "the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)(Said and cited by the Third Circuit in *Kossler v. Crisanti*, 564 F.3d 181, 188 (3rd Cr. 2008)). Consistent with this purpose, the Third Circuit held that, "a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element**.** [4] *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *see also Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (holding that expungement under the Accelerated Rehabilitative Disposition program was not a favorable termination because the program 'imposes several burdens upon the criminal Defendant not consistent with innocence')." Accordingly, under Third Circuit authority, "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused. A plaintiff may attempt to

indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways:  (a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or  (f) a final order in favor of the accused by a trial or appellate court." *Donahue*, 280 F.3d at 383

Here, the acquittal or not guilty finding was on July 7, 2011. If so, the last element the Plaintiff needed to proceed with the 1983, 1985 and 1983 claims was on July 7, 2011. The action was filed October 11, 2011 or three months and four days from when the two and one year statute of limitation periods for the § 1983 1985 and 1986 action occurred. The 1983 and 1985 limitation periods expires on July 7, 2013 while the limitation period for the 1986 claim ended on July 7, 2012. Therefore, plaintiff's § 1983 1985 and 1986 claims were all brought before the limitation period expired, none of the Plaintiff's claims are time-barred.

CONCLUSION

For the argument made above and the authority cited, the Plaintiff respectfully submits the Plaintiff's proposed order should be entered as an Order of this Court.

Date: January 20, 2012

ECF SIGNATURE    BMP3198                    /s/

*Brian M. Puricelli*
Brian M. Puricelli
Attorneys for Plaintiff

Law Offices of Brian Puricelli
691 Washington Crossing Road
Newtown PA 18940     (215) 504-8115     puricellib@gmail.com

CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing document (Opposition to the motion to dismiss in part the First Amended Complaint) has this 20TH day of January, 2012, been filed electronically and is available for viewing and downloading on the ECF System: Served with the document by ECF was/were:

Robert P. DiDomenicis, Esquire
Holsten & Associates
One Olive Street
Media PA 19063

ECF SIGNATURE        BMP3198                        /s/
                     Attorneys for Plaintiff

32

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

ROBERT GORMAN                           :
                                        : CIVIL ACTION
   -vs-                               :
                                        : NO. 11-6340
CITY OF CHESTER                         :
JOSEPH BAIL, FLOYD LEWIS III,           :
DAREN ALSTON, AND WENDELL BUTLER        :


ORDER

     AND NOW, this _____ day of _____, 2012, upon consideration of

the Plaintiff's opposition response to the Defendants' Motion to Dismiss in Part the First

Amended Complaint, IT IS ORDERED that the motion is denied.

     IT IS FURTHER ORDEED that the Defendants shall file and serve an Answer to the

First Amended Complaint within Ten (10) days of the date of this Order and if not the Plaintiff

may move for a Default Judgment.

BY THE COURT:

_____
                          J.