**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT GORMAN,          :      CIVIL CASE
     Plaintiff,             :
                   v.      :
                       :
JOSEPH BAIL, et al.,        :
     Defendants.          :      NO. 11-6340

<u>**MEMORANDUM RE:  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**</u>

**Baylson, J.**                                              **May 23, 2013**

**I.**    **Introduction**

On November 9, 2012, Plaintiff Robert Gorman, a police officer for the City of Chester,

Pennsylvania ("Chester"), filed his Second Amended Complaint (ECF 22) asserting claims under

42 U.S.C. § 1983 – for violations of his First, Fourth and Fourteenth Amendment rights – and

state law – for false imprisonment, malicious prosecution, abuse of process, and invasion of

privacy – arising out of an alleged conspiracy among Chester's Mayor, Wendell Butler, and

certain of his superiors in Chester's Police Department – Major Joseph Bail; former Chief Floyd

Lewis III; and current Chief Darren Alston, who was also a major at relevant times – to have

Plaintiff arrested and terminated from the police department.  Plaintiff also named Chester as a

defendant.  On November 21, 2012, Defendants filed a Motion to Dismiss Plaintiff's Second

Amended Complaint (the "Motion") (ECF 25).  Plaintiff Responded (ECF 28) on December 19,

2012.

For the reasons below, Defendants' Motion will be GRANTED in part and DENIED in

part.

## II.     Procedural History

Plaintiff filed his original Complaint on October 11, 2011.  On December 8, 2011, Defendants' filed a Motion to Dismiss the original Complaint (ECF 5).  On December 22, 2011, Plaintiff requested additional time to respond to that motion or, in the alternative, file an amended complaint (ECF 6).  The Court granted leave to amend (ECF 7) on December 23, 2011.  On December 28, 2011, Plaintiff filed his First Amended Complaint (ECF 8).  On January 10, 2012, Defendants moved for partial dismissal of the First Amended Complaint (ECF 9).  On May 9, 2012, the Court issued a Memorandum and Order (ECF 13-14) granting the motion in part and denying it in part, and permitting Plaintiff to file a Second Amended Complaint.  Plaintiff then filed a motion for discovery in aid of filing his second amended complaint (ECF 15), which the Court granted (ECF 17) on May 30, 2012.  Plaintiff then filed his Second Amended Complaint.

## III.    Summary of Plaintiff's Factual Allegations

On October 11, 2008, Plaintiff, while off-duty, had an altercation with Marvin J. Fowler at a restaurant known as Crown Chicken (the "Crown Chicken Incident").  Fowler was intoxicated and accosted Plaintiff.  Plaintiff told Fowler to leave him alone more than once, but Fowler persisted in his menacing conduct, ultimately threatening to shoot Plaintiff.  Although Fowler never displayed a gun or weapon of any kind, Plaintiff felt the need to defend himself, and responded by "inter alia, drawing his pistol and physically escorting Fowler" out of Crown Chicken.[1]  (2d Am. Compl. ¶ 11.)

---

[1] Plaintiff alleged that Fowler "had a criminal history" including "four pages of convictions or guilty pleas to violations of the Pennsylvania Drug, Drug Device, and Cosmetic Act."  (2d Am. Compl. ¶ 10.)  Plaintiff does not allege that he was aware of this history during the Crown Chicken Incident.

During the altercation, the proprietor of Crown Chicken activated an alarm, and an on-duty Chester police officer came to the restaurant.  Plaintiff gave a report of the incident to the responding officer.  Fowler subsequently initiated a citizen's complaint against Plaintiff.  Thomas Worrilow investigated the complaint for the Delaware County Criminal Investigation Division.[2]  According to this investigation, Fowler admitted to:  being intoxicated at Crown Chicken, harassing other customers, being escorted from Crown Chicken several times before Plaintiff arrived, repeatedly accosting Plaintiff despite being told to leave him alone, and "sa[ying] something to [Plaintiff]" before Plaintiff removed him the restaurant.  (Id. ¶ 16.)

Fowler's complaint and Worrilow's investigation were reviewed by the Delaware County District Attorney's Office, and Plaintiff was not charged with any crime.  The Chester Police Department took no action against Plaintiff at that time.

Fowler then initiated a private criminal complaint against Plaintiff.  The complaint was scheduled for a hearing, but it was dismissed after Fowler failed to show up and Plaintiff testified on his own behalf.

Defendants then commenced an extended conspiracy to have Plaintiff arrested and terminated from the Chester Police Department because of the Crown Chicken Incident.  Sometime in early January 2009,[3] Mayor Butler and Chief Lewis met with Majors Bail and

---

[2] Plaintiff's Second Amended Complaint does not clearly allege who performed this investigation.  (See id. ¶¶ 14-16 (referring to an investigation, but not mentioning who carried it out).)  However, Plaintiff alleges that he was investigated twice and, in paragraphs 29 and 30, alleges that Worrilow conducted two investigations.  Accordingly, the Court will treat Worrilow as having conducted the investigation for the Delaware County Criminal Investigation Division.

[3] Plaintiff alleges that the meeting took place approximately eight months before August 29, 2009.  (Id. ¶¶ 19-22.)

Alston,[4] in addition to two attorneys from the City Solicitor's Office, to discuss the Crown Chicken Incident and taking action against Plaintiff. At the meeting, Bail communicated a desire "to continue to investigate and prosecute" Plaintiff. (Id. ¶ 19.) Someone "suggested that Plaintiff be []arrested," and "[n]o one objected." (Id.) It was then suggested that the District Attorney's Office should be consulted, and Bail was assigned that task. Sometime after the meeting Bail received a letter from the District Attorney's Office instructing him to follow the correct procedures.

Defendants took no further action regarding Plaintiff until sometime after August 2009. (Id. ¶¶ 20-24.) On or about August 29, 2009, the Chester Fire Commissioner relayed information to Bail that led him to believe that Fowler had been bribed not to appear at the hearing for his private criminal complaint against Plaintiff.[5] Bail then instructed Warrilow to re-investigate Plaintiff.

Warrilow did not begin his re-investigation until approximately January 12, 2010, and it lasted until approximately November 4, 2010. In mid to late January 2010, Warrilow interviewed the Fire Commissioner, Fowler, and Fowler's wife. The Fire Commissioner told Warrilow that he had "overheard a conversation between two males" about one of them having been approached by a Chester police officer and offered $2000. The Commissioner also stated that neither Plaintiff's nor Fowler's name had been used during the conversation, and that he did not know Fowler by sight. (Id. ¶ 26.) Fowler's wife told Worrilow that Fowler had not shown up for the hearing because of an outstanding probation violation. Fowler said he failed to appear

---

[4] Plaintiff alleges that at some point, Lewis retired and Alston was promoted to Chief of Police. (Id. at ¶ 24.) Nothing in Plaintiff's Second Amended Complaint, Defendants' Motion, or Plaintiff's Response to the Motion indicates that this fact affects the Court's analysis of Plaintiff's claims.

[5] Plaintiff alleges that Bail "reported" this information. (Id. ¶ 22.) However, Plaintiff does not allege who received this report.

at the hearing because his bus was delayed, and when he arrived, he was told his complaint had already been dismissed.  Worrilow's re-investigation also "revealed that other people present" at the Crown Chicken Incident "had not seen [Plaintiff] strike Fowler."  (Id. ¶ 29.)

On November 4, 2010, at the conclusion of Warrilow's re-investigation, Bail procured an arrest warrant for Plaintiff.  In his affidavit of probable cause, Bail stated that Plaintiff "pulled a gun from his waist band, struck Fowler with it several times, caused a cut and lump over Fowler's eye, and physically pushed Fowler out of [Crown Chicken]."  (Id. ¶ 31.)  Bail did not disclose in his affidavit that:

1. The Crown Chicken Incident had been investigated twice;

2. One of those investigations was based on unreliable information from the Fire Commissioner, who also happened to be Bail's friend;

3. Based on those investigations, neither Worrilow nor the District Attorney's Office had filed charges against Plaintiff ; and

4. Bail was seeking the warrant pursuant to the January 2009 agreement with Butler, Lewis, Alston, and two City Solicitors.[6]

On November 11, 2010, after obtaining the warrant, Bail arrested Plaintiff.  (Id. ¶ 34.) Butler, Lewis, and Alston knew about the arrest warrant, but did not review or otherwise verify its validity and did nothing to stop the arrest.  (Id. ¶¶ 32-33.)

On November 13, 2010, because of his arrest, Plaintiff was suspended from the police force without pay.  (Id. ¶ 35.)  Plaintiff was not given any opportunity to be heard prior to his suspension.  (Id.)  Pursuant to a collective bargaining agreement, Plaintiff requested a hearing before the Chester City Council, but Butler, Alston, and Lewis denied his request, and caused the

---

[6] Plaintiff alleges that the agreement was among Defendants and two City Solicitors, and the only allegation of them all conferring is the meeting in January 2009.

hearing to be held before the Chester Civil Service Commission, which Butler controlled.  The Commission terminated Plaintiff on December 16, 2010.[7]  (Id. ¶¶ 36-37, 39.)

Plaintiff subsequently filed a grievance.  The grievance resulted in an arbitration decision in Plaintiff's favor, and he was reinstated.  (Id. ¶ 40.)

On or about July 7, 2011, Plaintiff was tried for the criminal charges arising out the Crown Chicken Incident.  (Id. ¶ 41.)  He was found not guilty.  (Id.)  Plaintiff testified on his own behalf at the trial.  (Id.)

## IV.    Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 555 U.S. at 684.

---

[7] Defendants dispute the dates of Plaintiff's arrest and termination.  They attached a copy of the letter suspending him and the Commission's decision to terminate him, which are dated November 12, 2009 and December 24, 2009.  The Court declines to consider these documents pursuant to Fed. R. Civ. P. 12(e).  Even if the Court were inclined to consider them, the dates of the conduct alleged in Plaintiff's Second Amended Complaint are immaterial to the disposition of Defendants' Motion.

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  Id. at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Despite Iqbal's strong ruling that the courts need only accept the truth of factual allegations contained in a complaint, Plaintiff's Second Amended Complaint contains constant confusion of facts and legal arguments that impeded the Court's review.

**V.    Discussion**

Plaintiff's claims can be summarized as follows:

1.   Violation of his Fourth Amendment protections against search and seizure without probable cause, "counts" 1 and 2 of his Second Amended Complaint;

2.   Violation of his First Amendment right to be free from retaliation for protected speech, "count" 3 of his of his Second Amended Complaint;

3.   Violation of his Fourteenth Amendment right to due process before his suspension and termination from the Chester Police Department, "count" 4 of his Second Amended Complaint;

4.   Section 1983 conspiracy, "count" 5 of his Second Amended Complaint;

5. Pendent state law claims, "counts" 9 through 13 of his Second Amended Complaint.[8]

## A.   "Counts" 1 and 2:  Plaintiff's Fourth Amendment Claims

Plaintiff claims that Defendants violated his constitutional rights under the Fourth Amendment by arresting and then searching him without probable cause.

The threshold issue for Plaintiff's Fourth Amendment claims is whether Bail had probable cause to arrest him.  Holmes v. McGuigan, 184 F. App'x 149, 150 (3d Cir. 2006) (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir.1988)).  "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  The fact that a plaintiff was ultimately acquitted of all charges for which he was arrested "is irrelevant to the probable cause analysis."  Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)) ("the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime" (citing Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir.2003))).

Plaintiff argues that Bail used an untrue affidavit of probable cause to obtain the warrant for his arrest.  In order to succeed on his false affidavit theory, Plaintiff must plead facts that, if true, could establish that:

---

[8] In "counts" 6 through 8, Plaintiff brings claims styled as section 1983 violations for "Failure to Control or Supervise," "Condone Ratify, Approval," and "Lack of Policies and Procedures."  These are theories of liability, not distinct claims.

1. Bail "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood"; and

2. "Such statements or omissions are material, or necessary, to the finding of probable cause."

Wilson, 212 F.3d at 786-87 (citation and quotations omitted).  Under this standard, Bail could not proffer any facts of which he had a "high degree of awareness of [their] probable falsity" – i.e., "when viewing all the evidence, [Bail] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported"; and Bail was expected to disclose all facts "in his ken that [a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know" – a paradigm balancing between the extremes of requiring that "officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip," on the one hand, and allowing officers to "make unilateral decisions about the materiality of information, or, after satisfying [themselves] that probable cause exists, merely inform the magistrate or judge of inculpatory evidence," on the other.  Id. at 787-88 (third alteration in the original) (citations and quotations omitted).

"To determine the materiality of . . . misstatements and omissions, [courts] excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."  Id. at 789 (citing Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).  Thus, in evaluating the truthfulness of Bail's affidavit, the Court is not concerned with whether Bail described what actually transpired during the Crown Chicken Incident, but, rather, whether Bail accurately reported the information of which he was personally aware.

For the reasons below, the Court finds that the information in Bail's affidavit was sufficient to establish legal probable cause to arrest Plaintiff, and Plaintiff has not pleaded facts that can lead to a reasonable conclusion that Bail misstated or omitted material facts. Therefore, Plaintiff's Fourth Amendment claims must fail.

### 1. The Facts in Bail's Affidavit Were Sufficient to Establish Legal Probable Cause.

Plaintiff alleges, and Defendants do not dispute, that Bail's affidavit stated that:

1. Plaintiff drew a pistol,

2. Hit Fowler with it more than once, causing a cut and lump over Fowler's eye, and

3. Then forced Fowler out of the Crown Chicken.

(2d Am. Compl. ¶ 31.) Plaintiff also alleged, and Defendants do not dispute, that Bail obtained a warrant for three crimes: aggravated assault, simple assault, and harassment. (Id. ¶ 34.)

The elements of these crimes are consistent with Bail's affidavit, and, therefore, the affidavit was sufficient to establish probable cause to arrest Plaintiff:

1. Aggravated assault: includes "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon," 18 Pa. C.S.A. § 2702(a)(4);

2. Simple assault: includes "attempt[ing] to cause, or intentionally, knowingly or recklessly caus[ing] bodily injury to another;" "negligently caus[ing] bodily injury to another with a deadly weapon;" and "attempt[ing] by physical menace to put another in fear of imminent serious bodily injury," id. § 2701(a)(1)-(3); and

3. Harrassment: includes "strik[ing], shov[ing], kick[ing], or otherwise subject[ing] [an]other person to physical contact" with the "intent to harass, annoy or alarm" that person, id. § 2709(a)(1).

Hitting another person with a pistol, as Bail alleged Plaintiff did, may amount to aggravated assault. See Commw. of Pa. v. Duffy, 832 A.2d 1132, 1138 (Pa. Super. Ct. 2003), appeal

denied, 845 A.2d 816 (Pa. 2004) (stating that "'striking the victim with a gun, may be used to satisfy the force requirements of at least two crimes, kidnapping and aggravated assault, and the sentences for each will not merge because these crimes are not greater and lesser included offenses'" (quoting Commw. Pa. v. Anderson, 650 A.2d 20, 22 (Pa. 1994))); Commw. of Pa. v. Gruff, 822 A.2d 773, 779 (Pa. Super. Ct. 2003), appeal denied, 863 A.2d 1143 (Pa. 2004) (describing Commw. of Pa. v. Chance, 458 A.2d 1371 (Pa. 1983), as upholding a "conviction for causing bodily injury to [a person] with a deadly weapon" where the "victim sustained injuries to her hand which shielded her from defendant's attacks on her with the gun"). "The act of pointing a gun at another person may constitute a simple assault . . . ." 4 Summ. Pa. Jur. 2d Criminal Law § 9:11 (2d ed.) (citing Commw. of Pa. v. Reynolds, 835 A.2d 720 (Pa. Super. Ct. 2003)); accord Gruff, 822 A.2d at 773 n.5.

## 2.    Bail's Affidavit Did Not Contain False Statements.

Plaintiff neither argues in his Response nor alleges facts in his Second Amended Complaint sufficient to support an argument that Bail made false statements in his affidavit.  To the contrary, Plaintiff's allegations are not inconsistent with Bail's affidavit:  Plaintiff alleges that "[t]he force [he] used consisted of, inter alia, drawing his pistol and physically escorting Fowler out of the store." (2d Am. Compl. ¶ 11 (emphasis added).)  Indeed, in his Second Amended Complaint , Plaintiff never denies striking Fowler with his pistol.

Plaintiff does allege that "Worrilow's second investigation revealed that other people present at the Crown Chicken . . . had not seen [Plaintiff] strike Fowler." (Id. ¶ 29.)  However, this information could not have given Bail the requisite "obvious reasons to doubt the accuracy

of" his account of Plaintiff's conduct, <u>Wilson</u>, 212 F.3d at 788,[9] because Plaintiff does not allege that:

1. No one saw Plaintiff strike Fowler;

2. Fowler ever denied that Plaintiff struck him; or

3. These "other people" witnessed the entire altercation between Plaintiff and Fowler.

Perhaps more importantly, Plaintiff acknowledges – by using the phrase "inter alia," i.e., among other things – that his Second Amended Complaint omits facts about the force he used against Fowler.  (2d Am. Compl. ¶ 11.) [10]

### 3. Bail's Alleged Omissions

Plaintiff alleges that Bail omitted two categories of information from his affidavit:

1. Information about the investigations of Plaintiff; and

2. Information about Fowler's conduct during the Crown Chicken Incident.[11]

For the reasons below, this information cannot establish that Bail's affidavit was false.

#### a. Alleged Omissions Regarding the Investigations of Plaintiff

According to Plaintiff, Bail knew and should have disclosed in his affidavit that Worrilow had investigated the Crown Chicken Incident twice, and that based on these

---

[9] Plaintiff never argues or alleges facts consistent with a claim that Bail actually "entertained serious doubts as to the truth of his" account of Plaintiff's conduct.  <u>Id.</u> at 788.

[10] Plaintiff characterizes the force as "minimal," but this description is entirely unhelpful given that he acknowledges omitting information about what he did to Fowler.  (<u>Id.</u> ¶ 11.)

[11] Plaintiff's allegation that that "Worrilow's second investigation revealed that other people present at the Crown Chicken . . . had not seen [Plaintiff] strike Fowler" could also be considered information that Bail omitted his affidavit.  (2d Am. Coml. ¶ 29.)  However, for the same reasons that this allegation is insufficient to establish that Bail knowingly or recklessly made a false statement, it is either not "the kind of thing [a] judge would wish to know," <u>Wilson</u>, 212 F.3d at 788 (citation and quotation omitted), or not material, because it could not affect the determination of probable cause.

investigations, neither the District Attorney's Office nor Worrilow had filed charges against Plaintiff.  Plaintiff also contends that Bail knew and should have disclosed that:

1.  Worrilow's second investigation was commenced based on unreliable information about Fowler receiving a bribe;

2.  Worrilow "coerced one witness in a failed attempt to discover evidence against" Plaintiff; and

3.  Bail sought the warrant in order to carry out an agreement among Defendants.

(2d Am. Compl. ¶ 30.)

However, Plaintiff provides no argument or legal authority supporting his contention that these facts are material to the determination of probable cause.  Indeed, the Court cannot divine how these facts are "the kind of thing[s] [a] judge would wish to know," Wilson, 212 F.3d at 788 (citation and quotation omitted), because they have no impact on whether the information in Bail's affidavit was sufficient to establish probable cause.

### b. Alleged Omission of Fowler's Conduct During the Crown Chicken Incident – Plaintiff's Claim of Self-Defense

In his Second Amended Complaint, Plaintiff alleges that he "was compelled to defend himself" against Fowler's aggressive behavior, and that Bail's "fail[ure] to inform the judicial authority that Fowler had threatened to shoot [Plaintiff] and that [Plaintiff] had told Fowler several times to leave him alone" amounted to a "misrepresent[ation] and/or omi[ssion of] . . . relevant and material facts."  (Id. ¶¶ 11, 31.)  Although Plaintiff's Response fails to elaborate on the basis for these legal conclusions,[12] the Court understands Plaintiff to argue that Bail's

---

[12] Plaintiff confined his Response to asserting that omission of material facts from Bail's affidavit "destroy[ed] the existence of probable cause," and that Plaintiff's contention that "Bail had omitted/misrepresented material facts . . . . is supported by the ultimate dismissal of the charges against . . . Plaintiff."  (Resp. at 3.)  As noted above, the fact that Plaintiff was ultimately acquitted of all charges "is irrelevant to the probable cause analysis."  Wright, 409 F.3d at 602 (internal citations and quotations omitted).

affidavit should have included a description of Fowler's conduct, because Fowler's conduct justified Plaintiff's use of force as self-defense, thereby negating probable cause for his arrest.

For the reasons below, the Court finds that Plaintiff's claims of self-defense cannot negate the otherwise valid probable cause Bail had to arrest him.

### i.     Third Circuit Jurisprudence on the Relationship Between Defenses and Probable Cause

The Third Circuit has addressed the relationship between affirmative defenses and probable cause on at least three occasions:  Holman v. City of York, PA, 564 F.3d 225, 231 (3d Cir. 2009); Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007); and Radich v. Goode, 886 F.2d 1391 (3d Cir. 1989).  Although the Third Circuit apparently endorses the general principle that affirmative defenses may negate probable cause, it has never specifically addressed self-defense in a precedential opinion and has defined only other circumstances in which other affirmative defenses do not negate probable cause.  See Holman, 564 F.3d at 231 ("We do not endorse the [d]istrict [c]ourt's statement that affirmative defenses are 'not a relevant consideration' – as we have never so held – but we do conclude that, here, the defense . . . need not have been considered. . . .").

Holman – which is the Third Circuit's most recent case this topic, and which also reviewed the Third Circuit's two earlier cases, Sands and Raddich – held that an officer was not required to consider the affirmative defense of necessity when making an at-the-scene probable cause determination regarding criminal trespass.  564 F.3d at 231.  In reaching this conclusion, Holman endorsed the view that "generally[,] 'affirmative defenses are to be ruled upon by a court of competent jurisdiction'" and indicated that this general principle applies with particular force where the issues raised by a defense are "not . . . 'clear cut.'"  Id. (quoting Sands, 502 F.3d at 269).  Holman ultimately expressed the Third Circuit's position on the relationship between

affirmative defenses and probable cause in negative terms:  officers are not required to "resolve . . . daunting issues" – e.g., officers need not "analy[ze] . . . legal considerations" raised by statute of limitations defenses, or "examine countless factual permutations to determine" the viability of necessity defenses.  Id.

Holman also expressed particular concern with imposing requirements that would complicate officers' at-the-scene determinations of probable cause, id. (holding that "the defense of necessity need not have been considered in the assessment of probable cause for arrest for trespass at the scene" (emphasis added)), and distinguished between:

3. Defenses that are "specifically included in the statute setting forth the elements of the crime"; and

4. Defenses that "appear[] in . . . separate section[s] of the [state's] criminal code" and are not "explicitly referenced" in the section that "details the elements of" the crime for which the plaintiff was arrested,

suggesting that the former category of defenses are more appropriately considered part of an officer's determination of probable cause, id. at 230.[13]

---

[13] In a non-precedential opinion, Davis v. Malitzki, the Third Circuit stated that self-defense could not negate probable cause, because an "exculpatory defense, no matter how compelling, could not defeat . . . already-present probable cause." 451 F. App'x 228, 234 (3d Cir. 2011) (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000); Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); and Gramenos v. Jewel Cos. Inc.,797 F.2d 432, 440 (7th Cir. 1986)).

Merkle, the only Third Circuit case Davis cited, stated only that an officer has no duty to "undertake an exhaustive investigation in order to validate probable cause that, in [the officer's] mind, already existed."  211 F.3d at 790 n.8.  An officer's duty to investigate is entirely distinguishable from the issue of whether evidence establishing exculpatory defenses can negate probable cause.

Regarding the two Second Circuit opinions Davis cited, Jocks and Ricciuti, Jocks specifically held both that evidence of defenses eliminating culpability can negate probable cause, and that self-defense may qualify as such a defense.  Jocks, 316 F.3d at 135-36.  Jocks also cited Ricciuti in the course of explaining that "we do not . . . permit an officer to deliberately disregard facts known to him which establish a justification."  Jocks, 316 F.3d at 135-36 (stating

##### ii.        Applying Third Circuit Jurisprudence to Self-Defense

Applying the test in Holman, the Court concludes that, as a matter of law, self-defense is

not the type of affirmative defense that officers must consider or disclose in affidavits of

probable cause.  In reaching this conclusion, the Court notes that claims of self-defense to an

assault necessarily admit involvement in a violent altercation.  Thus, self-defense is inherently an

issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest

warrant.[14]  In other words, the forum in which to exercise a defense of self-defense, at least on

---

that the holding in Ricciuti was limited to the issue of whether an officer had a "duty . . . to
investigate exculpatory defenses offered by the person being arrested or to assess the credibility
of unverified claims of justification before making an arrest.")

   Gramenos, decided by the Seventh Circuit in 1986, addressed affirmative defenses not at
all.  Rather, its relevant holding was that "the report of a[ single] eyewitness who has good
reasons to tell the truth furnishes probable cause."  797 F.2d at 440.  In discussing the basis for
this conclusion, Gramenos endorsed the position that with such a report in hand, officers may
obtain a warrant "without further investigation or a narration of contrary evidence."  797 F.2d at
440 (emphasis added).  This places Gramenos in apparent tension with at least two later Third
Circuit cases, Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000), and Reedy v. Evanson, 615 F.3d
197 (2010), which clearly stand for the proposition that police officers may not ignore
exculpatory evidence.  Reedy, 615 F.3d at 214, 223 (officers cannot "'disregard plainly
exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that
probable cause exists,'" thereby "creat[ing an] 'unnecessary danger of unlawful arrest'" (quoting
Wilson, 212 F.3d at 790, and Malley v. Briggs, 475 U.S. 335, 345 (1986))).

   [14] The Court notes that there is a perhaps crucial distinction between cases in which:

> 1.  The officer maintained a good-faith belief that the
>     inculpatory facts establish probable cause, though he failed
>     to consider or disclose facts relevant to a defense, and
>
> 2.  The officer did not have a good-faith belief in probable
>     cause, and, perhaps guided by some ulterior motive, he
>     intentionally ignored the existence of a defense or failed to
>     disclose the relevant information in an effort to fabricate
>     probable cause.

Under Holman, the former is not actionable.  Regarding the latter, the Court can see how such
conduct would still be actionable, despite the holding in Holman.  However, such exceptional

the facts of this case, is at trial, not in a subsequent civil rights civil suit that challenges the

sufficiency of an affidavit of probable cause upon which an arrest warrant was issued by a judge.

### iii.    Plaintiff's Allegations Are Insufficient to Support His Claim of Self-Defense.

Alternatively, the Court finds that even if self-defense could negate probable cause,

Plaintiff's allegations are insufficient to permit a reasonable officer to conclude that his conduct

during the Crown Chicken Incident was self-defense.[15]  In his Second Amended Complaint,

Plaintiff alleges that Fowler was intoxicated, accosted Plaintiff and others more than once, and

threatened to shoot Plaintiff.[16]  Plaintiff also alleges that he told Fowler to leave him alone more

---

cases present unique considerations that are simply not relevant when an officer executes his duties in the ordinary course.

The facts of <u>Jocks</u>, the case in which the Second Circuit held that self-defense could negate probable cause, are illustrative.  In <u>Jocks</u>, the plaintiff was arrested by an off-duty officer after the plaintiff allegedly assaulted him.  The plaintiff claimed that the officer had provoked the use of force in self-defense by threatening the plaintiff with a pistol without identifying himself as a police officer. 316 F.3d at 132.  Under such circumstances, a reasonable jury could conclude that the officer never entertained a good-faith belief that the plaintiff had committed a crime and was motivated to arrest the plaintiff by a desire to exact revenge or cover-up his own unlawful use of a firearm.  (The Court notes that <u>Jocks</u> neither relied on nor discussed the issue of good-faith raised in by this Court.)

Unlike <u>Jocks</u>, the facts of this case cannot support a reasonable inference that Bail lacked a good-faith belief that Plaintiff had committed a crime.  Indeed, for reasons discussed in the text, even assuming that Bail believed Plaintiff's account of the Crown Chicken Incident, Bail could not have reasonably concluded that Plaintiff had acted in self-defense.

[15] In <u>Radich</u>, the Third Circuit "assumed . . . without deciding, that the existence of an affirmative defense was relevant to the determination of probable cause" and "then framed the dispositive inquiry as whether an officer, 'acting reasonably . . . under the facts and circumstances' known to him, would conclude that the affirmative defense applied."  <u>Holman</u>, 564 F.3d at 230 (quoting <u>Radich</u>, 886 F.2d at 1396-97).  "If the answer was yes, then probable cause did not exist." <u>Id.</u> (citing <u>Radich</u>, 886 F.2d at 1398).  Accordingly, the Court proceeds assuming that the standard for determining if a defense negates probable cause is whether a reasonable officer would have believed the defense applied.

[16] It is questionable whether Plaintiff's allegations are sufficient to establish that Bail was aware of Fowler's threat.  According to Plaintiff, the first investigation "revealed that . . . Fowler

than once.  Plaintiff does not, however, allege that Fowler actually hit him, or anyone else, or that Fowler was armed.  Pennsylvania law is clear that Plaintiff's use of a pistol to subdue an unarmed attacker does not qualify as self-defense.  Commw. of Pa. v. Witherspoon, 730 A.2d 496, 499 (Pa. Super Ct. 1999) (deadly weapons cannot be used to subdue an unarmed attacker (citing Commw. of Pa. v. Cutts, 421 A.2d 1172 (Pa. Super. Ct. 1980) and Commw. of Pa. v. Jones, 332 A.2d 464 (Pa. Super. Ct. 1974) (use of pocket knife against kicking and pushing assailants is excessive force))); see also Commw. of Pa. v. Reynolds, 835 A.2d 720, 735 (Pa. Super Ct. 2003) (sentencing judge need not have considered self-defense as a mitigating factor, in part, because the defendant's "use of a gun to threaten two unarmed men who posed no risk of deadly harm, vitiated [his] claim of self-defense").

Because the Court finds that Bail had probable cause to arrest Plaintiff as a matter of law, Plaintiff has no viable claim under the Fourth Amendment.

### B.      "Count" 3 – Plaintiff's First Amendment Retaliation Claim

Proper pleading of Plaintiff's First Amendment retaliation claim requires that he allege facts that, if true, would establish:

1.  "[C]onstitutionally protected conduct,"

2.  "[R]etaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and"

3.  "[A] causal link between the constitutionally protected conduct and the retaliatory action."

Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006), abrogated on other grounds by Iqbal, 556 U.S. 662 (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)).  The Court previously dismissed Plaintiff's First Amendment claim without prejudice, granting Plaintiff

---

advanced again on [Plaintiff], said something to him and was then escorted out of the Crown Chicken by [Plaintiff]."  (2d Am. Compl. ¶ 16 (emphasis added).)  Plaintiff never alleged that the re-investigation, or anything else, revealed Fowler's alleged threat to Bail.

"leave to replead this count with greater clarity and facts supporting a causal link" between his allegedly protected speech and Defendants' allegedly retaliatory conduct.  2012 WL 1646009, at *5 (E.D. Pa. May 9, 2012).  The Court also instructed Plaintiff that he "should specify what he means by 'Free speech and/or Petition Clause activities.'"  Id.

Plaintiff's Second Amended Complaint alleges that Defendants retaliated against him "for exercising his free speech and his right to petition for a finding of not guilty in open court." (2d Am. Compl. ¶ 49.)  In his Response, Plaintiff clarifies that he is claiming that Defendants retaliated against him because his testimony was instrumental in securing dismissal of Fowler's private criminal complaint.  (Resp. at 8.)  According to Plaintiff, "Defendants were unhappy with the dismissal," and, as a result, reinvestigated and arrested him.  (Id.)

 Truthful in-court testimony is protected speech, even when offered voluntarily by a government employee.  Reilly v. City of Atlantic City, 532 F.3d 216, 228-31 (3d Cir. 2008) (containing an extensive discussion and collecting cases).  Plaintiff, however, cannot establish the requisite causal connection between his testimony and Defendants' allegedly retaliatory conduct, because his Second Amended Complaint contains insufficient factual allegations to establish that Defendants were aware of his testimony.  He does not allege that Defendants attended the hearing at which he testified, and while he does allege that an investigator was present at the hearing, he does not allege that the investigator, or anyone else, communicated the fact or content of his testimony to Defendants.  (2d Am. Compl. ¶¶ 16, 26-29 (describing the information gathered during both investigations into the Crown Chicken Incident).)  Therefore, Plaintiff's First Amendment retaliation claim must fail, because Plaintiff provides no basis for a

reasonable conclusion that it was his testimony, as opposed to the mere fact of Fowler's private criminal complaint being dismissed, that motivated Defendants' alleged retaliatory conduct.[17]

### C.   "Count" 4 – Plaintiff's Fourteenth Amendment Procedural Due Process Claim

A procedural due process claim under the Fourteenth Amendment "is subject to a two-stage inquiry:"

> 5.   "[W]hether the plaintiff has a property interest protected by procedural due process, and"
>
> 6.    "[W]hat procedures constitute due process of law."

Schmidt v. Creedon, 693 F.3d 587, 595 (3d Cir. 2011) (citations and quotations omitted). Defendants do not dispute that Plaintiff had a property interest in not being suspended or terminated from his job as a Chester Police officer.  Instead, Defendants argue that he was either not entitled to process, or the process he received was sufficient to satisfy his rights under the Fourteenth Amendment.

Plaintiff alleges that after he was arrested, Defendants suspended him without pay and without a pre-suspension hearing.  Plaintiff also alleges that Defendants denied him the post-suspension and pre-termination hearing to which he was entitled under a collective bargaining agreement and Chester's Home Rule Charter.[18]  According to Plaintiff, he was entitled to a hearing before the City Council, but Defendants Butler, Alston, and Lewis caused his hearing to be before the Civil Service Commission, because the Commission was controlled by Butler.

---

[17] While the Court recognizes that there may be cases in which a reaction to the result of speech would rightly be considered a reaction to the speech itself, this is not one of those cases.

[18] Plaintiff also alleged that he was entitled to a hearing under Pennsylvania's Second Class City Law.  (2d A. Compl. ¶ 36.)  However, Chester is not a Second Class City.  According to the 2010 census, Chester has a population of 33,972.  http://factfinder2.census.gov/faces/nav/ jsf/pages/community_facts.xhtml.  In order to be a Second Class or Second Class A city, a city must have a population of at least 80,000.  53 P.S. § 101.  Chester is a Third Class city.  Id.

Plaintiff's allegation that he was suspended without any hearing is sufficient to state a claim for violation of his Fourteenth Amendment due process rights.[19]  Absent "extraordinary circumstances," police officers are entitled to a "brief and informal" hearing before being suspended without pay.  Schmidt, 693 F.3d at 596 (citing Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008); Gniotek v. City of Philadelphia, 808 F.2d 241, 243 (3d Cir.1986)). While being arrested and formally charged with a felony qualifies as such an extraordinary circumstance, Gilbert v. Homar, 520 U.S. 924, 934 (1997) ("an ex parte finding of probable cause such as a grand jury indictment provides adequate assurance that the suspension is not unjustified" and "[t]he same is true when an employee is arrested and then formally charged with a felony" (emphasis added) (citations and quotations omitted)), this Court is aware of no case holding that mere arrest, even upon issuance of a warrant, disposes of the need for a pre-suspension hearing.  See Kairo-Scibek v. Wyoming Valley West Sch. Dist., 880 F. Supp. 2d 549, 561-63 (M.D. Pa. 2012) (discussing Supreme Court and Third Circuit cases); cf. Potts v. City Of Philadelphia, 224 F. Supp. 2d 919, 942 (E.D. Pa. 2002) (Brody, J.) (concluding that arrest alone would be sufficient to revoke a gun permit without a hearing, in part, because the property interest in a gun permit was not related to a "basic life necessity," such as employment, and there was an "undoubtedly . . . a prevailing interest in ensuring that persons licensed to carry firearms do not present a danger to public safety.  In this sense, the revocation of a gun permit [was] more analogous to the extraordinary situations in which the Supreme Court has found that no pre-deprivation hearing is necessary").  Plaintiff does not plead, and Defendants do not argue, that he had been formally charged with a felony prior to his suspension.  (Mot. at 15-18.)

---

[19] Defendants argue that Lewis's deposition testimony that Plaintiff was given a pre-suspension hearing with a union representative present is sufficient to defeat Plaintiff's claim. The Court declines to consider Lewis's uncorroborated testimony at this stage in the case.  See Fed. R. Civ. P. 12(e).

Plaintiff also has a claim for denial of due process during his post-suspension and pre-termination hearing.  Defendants do not dispute that Plaintiff was entitled to a hearing before the City Council.  Instead, they contend that Plaintiff was offered such a hearing, but declined to attend it.  This is a factual dispute that cannot be resolved on a motion to dismiss.[20]  Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and quotation omitted)).  Defendants also argue that regardless of whether Plaintiff was provided with the post-suspension and pre-termination hearing to which he was entitled, his due process rights were satisfied because he participated fully in a post-termination grievance procedure.  Defendants provide no authority for this contention, and the Court is aware of none.  See Schmidt, 639 F.3d at 597 (declining to hold that "that adequate post-deprivation grievance procedures render a pre-deprivation hearing unnecessary").

### D.    "Count 5" – Section 1983 Conspiracy

A claim of civil conspiracy under section 1983 requires:

1.  "[T]he existence of a conspiracy involving state action;" and

2.  "[A] depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy."

Eichelman v. Lancaster County, 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007) (Strawbirdge, Mag. J.) (citing Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (Reed, J.)).  A conspiracy consists of "'a combination between two or more persons to do an unlawful act, or to do a lawful act by unlawful means, or to accomplish an unlawful purpose.'"  Id. (quoting

---

[20] Defendants also appear to argue that Plaintiff's post-suspension and pre-termination hearing was proper because Butler testified that "he was following the procedures set forth by the City Solicitor with respect to the hearing for Plaintiff," and it is his "belief that [the] City Council sits as the Civil Service Commission."  (Mot. at 5-6, 17-18.)  The Court declines to consider Butler's uncorroborated testimony at this stage in the case.  See Fed. R. Civ. P. 12(e).

Franklin Music Co. v. Am. Broad. Cos., Inc., 616 F.2d 528, 534 (3d Cir.1979)).  As described
above, Plaintiff has a viable section 1983 claim for denial of due process under the Fourteenth
Amendment.  Because Plaintiff alleged that Butler's, Lewis's, Bail's, and Alston's conduct
giving rise to this claim was prompted by their January 2009 agreement with Bail, Plaintiff also
has a viable conspiracy claim under section 1983.

> ### E.    Monell Liability

Defendants seek dismissal of Plaintiff's claims against Chester because of his failure to
plead a plausible factual basis for municipal liability under Monell v. N.Y. Dep't of Soc. Servs.,
463 U.S. 658 (1978).  The Court disagrees.

Chester "'may be liable under [section] 1983 for a single decision . . . by the official or
officials responsible for establishing final policy with respect to the subject matter in question.'"
Langford v. City of Atlantic City, 235 F.3d 845, 848 (3d Cir. 2000) (emphasis omitted) (quoting
Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 483-85 (1986)).  Plaintiff alleged that the
Mayor of Chester and the Chief of Police were directly involved in manipulating his post-
suspension/pre-termination hearing.  (2d Am. Compl. ¶¶ 35-39).  Because mayors and chiefs of
police are municipal decisionmakers, Plaintiffs' allegations are sufficient to make out a claim for
municipal liability.  See McTernan v. City of York, Pa., 564 F.3d 636, 658-59 (3d Cir. 2009)
(identifying the mayor and chief of police as municipal decisionmakers whose conduct may
support municipal liability).

> ### F.    Plaintiff's State Law Claims

Plaintiff brings claims for false imprisonment, malicious prosecution, abuse of process,
invasion of privacy via publicity placing him in a false light, and conspiracy.

Plaintiff's claims for false imprisonment and malicious prosecution fail because they both
require an absence of probable cause for his arrest, and, as discussed above, Bail had probable

cause to arrest him.  <u>Manley v. Fitzgerald</u>, 997 A.2d 1235, 1241(Pa. Commw. Ct. 2010) (citing

<u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994) and <u>Turano v. Hunt</u>, 631 A.2d 822, 824

(Pa. Commw. Ct. 1993)).

      Plaintiff's invasion of privacy claim also must fail because he cannot prove the element

of "publicity," "that a matter [was] made public by communicating it to the public at large, or to

so many persons that the matter must be regarded as substantially certain to become one of

public knowledge."  <u>DeBlasio v. Pignoli</u>, 918 A.2d 822, 824 n.3 (Pa. Commw. Ct. 2007), <u>appeal</u>

<u>denied</u>, 956 A.2d 437 (Pa. 2008) (citing <u>Harris by Harris v. Easton Publ'g Co.</u>, 483 A.2d 1377,

1383-85 (Pa. Super Ct.1984) (citing Restatement (Second) of Torts § 652D)).  Plaintiff's arrest,

hearing before the Civil Service Commission, and criminal trial are the only forms of "publicity"

he alleged.  None is sufficient alone, or in combination, to support a false light claim.

      Plaintiff does, however, have a claim for abuse of process.  Plaintiff alleged that

Defendants had a warrant issued for his arrest and then arrested him for the purpose of justifying

his termination.  This is sufficient to satisfy the elements of an abuse of process claim:

    1.  "[D]efendant . . . used a legal process against the plaintiff";

    2.  "[P]rimarily to accomplish a purpose for which the process was
        not designed"; and

    3.  "[H]arm has been caused to the plaintiff."

<u>Werner v. Plater-Zyberk</u>, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (citation and quotation

omitted); <u>see</u> <u>Urban v. Dollar Bank</u>, 725 A.2d 815, 817, 821-22 (Pa. Super. Ct. 1999) (suggesting

that abuse of process would cover plaintiff's claim that her employer had instituted involuntary

commitment proceedings against her for the purpose of creating a record to justify her

termination).

Having made out a claim for abuse of process, and having alleged that Defendants agreed

to engage in the conduct giving rise to that claim during their alleged January 2009 meeting,

Plaintiff also has a claim for civil conspiracy, which requires:

1. "[A]combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;"

2. "[A]n overt act done in pursuance of the common purpose;"

3. "[A]ctual legal damage"; and

4. "[M]alice . . . that the sole purpose of the conspiracy was to injure the plaintiff."

Doltz v. Harris & Associates, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003) (Baylson, J.) (citation

and quotation omitted).

### G. There Is No Reason to Allow Plaintiff to Further Amend His Complaint.

The Court noted above several instances in which Plaintiff failed to plead sufficient

allegations.  Because Plaintiff has now filed three complains, the Court will assume that Plaintiff

has plead the facts as best he can, and no further amendment will be allowed.  See Great W.

Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010) ("Under

[Federal] Rule [of Civil Procedure] 15(a), futility of amendment is a sufficient basis to deny

leave to amend.  Futility 'means that the complaint, as amended, would fail to state a claim upon

which relief could be granted.'" (quoting In re Merck & Co. Sec., Inc., Derivative & ERISA

Litig., 493 F.3d 393, 400 (3d Cir. 2007))).

## VI.   Conclusion

Defendants' Motion is GRANTED with respect to:

1. "Counts" 1 through 3 of Plaintiff's Second Amended Complaint, claiming violations of

      a.  The Fourth Amendment for unlawful search and seizure, and

      b.  The First Amendment for retaliation against protected speech; and

  2.  "Counts" 9, 10, and 12, claiming violations of state law for

      a.  False imprisonment,

      b.  Malicious prosecution, and

      c.  Invasion of privacy.

Defendants' Motion is DENIED with respect to:

  1.  "Counts" 4 and 5, claiming violations of

      a.  The Fourteenth Amendment for denial of procedural due process, and

      b.  Section 1983 for conspiracy; and

  2.  "Counts" 11 and 13, claiming violations of state law for

      a.  Abuse of process, and

      b.  Conspiracy; and

  3.  Dismissal of Chester as a defendant in this case.

An appropriate order follows.

O:\CIVIL 11\11-6340 Gorman v. City of Chester\11cv6340.Memo re Mot. to Dismiss 2d Am. Compl.docx